**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Reginald Wesley ROBINSON,
Defendant-Appellant.**

No. 78–5393.

United States Court of Appeals,
Fifth Circuit.

March 26, 1979.

Rehearing Denied April 20, 1979.

Dan R. Warren, Daytona Beach, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Douglas J. Titus, Jr., Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before GEWIN, HILL and FAY, Circuit Judges.

FAY, Circuit Judge:

On January 17, 1977 appellant, Reginald Wesley Robinson, was charged in a one-count indictment with conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. A trial resulted in his conviction.

Robinson argues that the trial court committed reversible error by permitting the jury to listen to hearsay statements of an alleged coconspirator before receiving any independent non-hearsay evidence that a conspiracy existed and that appellant was part of this conspiracy. Appellant further argues that the trial court erred by failing to charge the jury that an agreement to enter into a conspiracy cannot also be the overt act carried out in furtherance of the conspiracy.

Finding a fair trial, free of reversible error, we AFFIRM.

## I. FACTS

Beginning approximately June 20, 1977 and continuing until July 13, 1977 Drug Enforcement Administration agents Starratt and Carr, posing as buyers from Atlanta, engaged in negotiations for the purchase of one pound of cocaine. As a result of these negotiations, arrangements were made for Aurelius Sullivan to meet the agents at Jacksonville Beach around 4 p. m. on July 12, 1977. The purpose of this meeting was to permit Sullivan to see and count the $25,000 in cash which was to be used to purchase the pound of cocaine. In addition, Sullivan was to provide the agents with a sample of the cocaine so its quality could be assessed. After viewing the $25,000, Sullivan gave the agents a small sample of cocaine.

At trial, the agents introduced a tape of the conversations that took place throughout the day on July 12th. Appellant stipulated that the voice on the phone other than Sullivan's and the agents' was his. During the course of one of these taped conversations appellant stated to one of the agents that he would hate the fact that the agents had come all the way from Atlanta and would get nothing because of "an attitude." By this "attitude" Robinson was referring

to the agents' insistence that the whole pound be delivered at once instead of in several smaller deliveries as Robinson and Sullivan suggested. Appellant explained to the agent that if they were the police he would risk the loss of all the merchandise if he made a bulk delivery. Appellant further explained that while the agent risked nothing by sitting around with the money waiting for the various deliveries (because there was nothing illegal about having money) if he got caught with the "contraband" he would lose it all. Robinson stated on the tape that as far as he was concerned this was an "on the level deal" but that both sides should "put ample protection on themselves." There is also some discussion on the tape between appellant and an agent relating to a "previous deal" which appellant states "went down O.K."

On July 13, 1977 a meeting was arranged between Sullivan and a confidential informant, working with agents Carr and Starratt, during which this confidential informant was to extract a two-ounce sample of cocaine from the one pound package Sullivan claimed he possessed. The informant was shown two ounces of what appeared to be poor quality cocaine and she was also shown a pound of a substance she reported was not cocaine. Therefore, she did not purchase anything.

Appellant testified at trial that he assumed the role of a drug dealer to accomplish his plan to sell to the agents a pound of a substance which was not cocaine. He testified that he never represented to the agents that this substance would be cocaine.

The taped conversations introduced at the trial were the last contact between Robinson and the agents until Robinson's arrest on November 15, 1977. On June 26, 1978 appellant was sentenced to fifteen years imprisonment followed by a special parole term of six years pursuant to 18 U.S.C. § 4205(b)(2). This appeal followed.

## II. ADMISSIBILITY OF COCONSPIRATOR'S HEARSAY STATEMENTS

■ Appellant argues that the trial judge erred by admitting hearsay state-

ments of a coconspirator before independent evidence of the conspiracy had been presented. In *United States v. Apollo*, 476 F.2d 156 (5th Cir. 1973) this Court set out the procedure to be followed regarding the admissibility of a coconspirator's hearsay statements. *Apollo* requires that the trial judge give a cautionary instruction on the limited use of the hearsay testimony explaining clearly to the jury that the conspiracy itself and each defendant's participation in it must be established by independent non-hearsay evidence, which must be given either prior to the introduction of any evidence or immediately upon the first instance of such hearsay testimony.

■ The trial judge gave the proper cautionary instruction to the jury that the hearsay statements could only be received conditionally until the conspiracy and Robinson's participation in it was proved by independent non-hearsay evidence. In our recent en banc decision of *United States v. James*, 590 F.2d 575, (5th Cir. 1979), this Court revised the procedure which must now be followed regarding the admission of a coconspirator's hearsay statements. However, it is clear that *James* only applies prospectively to coconspirator statements which the government seeks to introduce at trial commencing after thirty days from the date of the *James* en banc opinion.

Since the trial judge correctly followed *Apollo*, we must determine whether there was sufficient non-hearsay evidence to establish the conspiracy and appellant's participation in it. The taped conversations between appellant and the agents contain ample independent non-hearsay evidence to establish this conspiracy and appellant's participation. In these conversations appellant refers to the manner of delivery of the merchandise which he insisted should be in several small quantities. Robinson states in the tape that if the agents are the police he doesn't want to lose everything by delivering the merchandise all at once. Appellant

also refers to the last deal between the agents and himself as having been successful and relays his fear of being caught with all the "contraband" at one time.

The alleged hearsay testimony of the coconspirator was admissible because there was substantial independent non-hearsay evidence establishing the conspiracy.[1] It is clear that

Any and all statements of an accused person, so far as are not excluded by the doctrine of confessions or by the privilege against self-incrimination, are usable against the accused as admissions and are not hearsay.

*United States v. Evans*, 572 F.2d 455, 488 (5th Cir. 1978). *See* F.R.E. 801(d)(2)(A).

In *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) the Supreme Court discussed the admissibility of taped conversations and the objections that the taped conversations were out-of-court statements by declarants who would not be subject to cross-examination. The Supreme Court stated:

Here, however, most of the tapes apparently contain conversations to which one or more of the defendants named in the indictment were party. The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case. Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial.

418 U.S. at 700–701, 94 S.Ct. at 3104 (citations omitted).

In this case, the reliability of the tape recording was not questioned and appellant

---

1. We cannot determine precisely from appellant's brief what particular coconspirator hearsay evidence he objects to. We can only speculate that appellant objects to the portions of the tape in which Sullivan, the coconspirator,

and the agents engage in conversations concerning the deal and where it cannot be determined whether or not appellant was actually present during these conversations.

stipulated that the voice in the tape which was not that of coconspirator Sullivan or that of agents Carr or Starratt was in fact his. The tape provided ample non-hearsay evidence of a conspiracy and the trial judge correctly followed *Apollo* regarding the admissibility of a coconspirator's hearsay statement.

### III. PROOF OF OVERT ACT IN FURTHERANCE OF A CONSPIRACY

Appellant argues that the trial judge committed reversible error by failing to charge the jury concerning Robinson's requested instruction eight.[2] The trial judge was correct in not charging the jury that an overt act is required and that the agreement to enter into the conspiracy can-

not also be the overt act. In a conviction under 21 U.S.C. § 846 there is no requirement that an overt act by one of the persons involved in the conspiracy be shown. *See United States v. Thomas*, 567 F.2d 638, 641 (5th Cir. 1978).

### IV. CONCLUSION

Finding appellant's contentions of error to be without merit, we AFFIRM.

---

2. Robinson's requested instruction eight read as follows:

Ladies and Gentlemen, you are further instructed that it is the law of the United States that an agreement to enter into a conspiracy to violate the law cannot also be the overt act, as alleged under count one of the Indictment.

If you find from the evidence that the telephone call of June 12, 1977, was the agreement to violate the law, then it would become your duty to return a verdict of not guilty, since an agreement alone is not a violation of the law.