UNITED STATES of America,
Plaintiff-Appellee,

v.

Harold Thomas WILSON,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Bobby Eugene HENDRIX,
Defendant-Appellant.

Nos. 79–5609, 79–5610.

United States Court of Appeals,
Fifth Circuit.
Unit A

Sept. 30, 1981.

Robert P. Scott, Houston, Tex. (Court-appointed), for defendants-appellants.

Terence J. Lynam, William C. Bryson, Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEE, TATE and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Harold Thomas Wilson and Bobby Eugene Hendrix, appellants, were indicted in a twenty-one defendant, thirty-five count indictment aimed at breaking an alleged her-

oin distribution ring in South Dallas, Texas. Wilson was charged with conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (1976) (Count 1), possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1976) (Count 9), and distribution of heroin, also in violation of 21 U.S.C. § 841(a)(1) (1976) (Count 18). Hendrix was charged with conspiracy to distribute heroin in violation of 21 U.S.C. § 846 (1976) (Count 1), and possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (1976) (Count 4).[1] Tried jointly with two other codefendants,[2] appellants were convicted by a jury on these respective counts. Each appellant was sentenced to concurrent terms of eight years imprisonment and four years on special parole for each offense.

Each appellant now appeals his convictions, claiming that: (1) the evidence was insufficient to sustain a conviction on each of the counts; (2) joinder with codefendant Turner was improper as a matter of law under Fed.R.Crim.P. 8; (3) the trial court abused its discretion in denying severance from the trial of codefendant Turner; and (4) in the case of Wilson, his right to a speedy trial was violated. We affirm Wilson's and Hendrix's convictions under the conspiracy count, but reverse their convictions on the other counts because of the lack of sufficient evidence. We also vacate the special parole term imposed on each appellant as part of his conspiracy conviction. We find that appellants' remaining contentions are without merit. We consider each issue separately.

## I. Sufficiency of the Evidence

Both Wilson and Hendrix raise claims of insufficiency of the evidence as to each count on which each one was convicted. Specifically, Wilson contends that the evidence was insufficient to support his convictions on Count 1, the conspiracy count, Count 9, the possession with intent to distribute count, and Count 18, the distribution count. Similarly, Hendrix argues that the evidence was insufficient to sustain his convictions on Count 1, the conspiracy count, and Count 4, the possession with intent to distribute count.

■ When the sufficiency of the evidence for a criminal conviction is challenged on appeal, the standard of review inquires as to whether the jury could have reasonably found that the evidence was inconsistent with every reasonable hypothesis of innocence. *United States v. Moreno*, 649 F.2d 309, 312 (5th Cir., 1981); *United States v. Rodgers*, 624 F.2d 1303, 1306 (5th Cir. 1980), *cert. denied*, 450 U.S 917, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). In applying this standard of review, we must consider the evidence and all reasonable inferences therefrom in a light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Moreno*, 649 F.2d at 312. For purposes of clarity and order, we evaluate *seriatim* the sufficiency of the evidence for each conviction of each appellant.

### A. Wilson

#### 1. Conspiracy Count

Wilson first challenges the sufficiency of the evidence supporting his conviction for conspiracy. We reject this challenge.

■ "The essence of a conspiracy is an unlawful agreement." *United States v. Middlebrooks*, 618 F.2d 273, 278 (5th Cir.), *modified on other grounds*, 624 F.2d 36 (5th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980). Ordinarily, the fundamental elements of the offense of conspiracy are an agreement between two or more persons to commit a crime and an overt act by one of them in furtherance of the agreement. *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Gor-*

---

1. Hendrix also was charged, in Counts 3 and 17, with distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (1976). These two counts, however, were dismissed by the government at the close of the evidence at his trial.

2. Robert Earl Turner and Charles Wayne Carter.

*don,* 580 F.2d 827, 834 (5th Cir.), *cert. denied,* 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978). However, in a conspiracy prosecution under 21 U.S.C. § 846, as is involved here, the government need not prove any overt act in furtherance of the conspiracy. *United States v. Gordon,* 580 F.2d at 834; *United States v. Littrell,* 574 F.2d 828, 832 (5th Cir. 1978). Accordingly, in a prosecution under 21 U.S.C. § 846, the government must establish, beyond a reasonable doubt, that a conspiracy existed, that the defendant knew of it, and that he voluntarily participated in it. *United States v. Middlebrooks,* 618 F.2d at 278; *United States v. Littrell,* 574 F.2d at 832. The agreement between the coconspirators and the defendant need not be proved by direct evidence but may be inferred from concert of action. *United States v. Malatesta,* 590 F.2d at 1381; *United States v. King,* 532 F.2d 505, 508 (5th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). Further, it is not necessary for all coconspirators to know each other or to work together on every phase of the criminal venture. *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

■ After reviewing the record, we find that there is sufficient evidence to sustain Wilson's conviction for conspiracy. The evidence indicates that Wilson obtained heroin for further distribution from a Larry Don Counter[3] and Robert Earl Turner, a codefendant in this case and a heroin distributor working for Counter. Glen Ray Johnson, a government witness, approximately thirty to forty times observed Wilson pay Counter proceeds from heroin Wilson sold for Counter. Johnson also saw Counter supply Wilson with heroin for further distribution on several occasions; and, on one occasion, Wilson accompanied Counter when the latter gave Johnson twenty five capsules of heroin for sale to third parties.[4]

Robert Earl Turner, a distributor for Counter and a codefendant called as a prosecution witness, supplied Wilson, among others, with heroin from Counter to sell to third parties. Under the arrangement between Counter and his various distributors, the distributors sold heroin capsules to heroin users for $12.00 each. From each sale, Counter received $7.00 and the street dealer, such as Wilson, received $5.00. Turner transferred the money received from the dealers, including Wilson, to Counter. At one point, Turner reduced the shares of Wilson and the other street dealers on a $12.00 heroin capsule from $5.00 to $4.00. Wilson objected to this cut and stated that he would from then on deal directly with Counter, eliminating his contact with Turner. In the summer of 1978, Turner supplied Wilson with heroin to sell on about six occasions, including the day Wilson was arrested, and he once saw Counter directly supply Wilson with heroin capsules.

This evidence clearly establishes the existence of a conspiracy to distribute heroin in South Dallas, that Wilson knew of the conspiracy, and that, with his knowledge, he voluntarily participated in the conspiracy. *United States v. Middlebrooks,* 618 F.2d at 278.

■ Wilson claims, however, that some of the evidence adduced at trial by the government concerning his involvement in the conspiracy was inadmissible under *United States v. James,* 590 F.2d 575.[5] Under *James,* an extra-judicial, hearsay statement of a coconspirator may be admitted against a criminal defendant only if the statement was made (1) by one who conspired with the party against whom the statement is offered, (2) during the course of the conspiracy and (3) in furtherance of the conspiracy. *United States v. Grassi,* 616 F.2d 1295, 1300 (5th Cir.), *cert. denied,* 449 U.S. 956, 101

---

3. Larry Don Counter was one of the twenty-one defendants named in the indictment in this case. He pled guilty to the conspiracy charge (Count 1) and was sentenced to fifteen years imprisonment and five years special parole.

4. This incident formed the basis for Count 18, the distribution count against Wilson.

5. Appellant Hendrix raises, with equal generality, the same claim with respect to his conspiracy conviction. *See* part I.B.1, *infra.*

S.Ct. 363, 66 L.Ed.2d 220 (1980); *United States v. James*, 590 F.2d at 578. These requirements must be established by a preponderance of independent evidence. *United States v. Grassi*, 616 F.2d at 1300–01.

■ Wilson does not identify any specific evidence in his claim of a *James* violation. His contention, though, seems to be directed generally at the testimony of Robert Earl Turner. Regardless of the evidence to which Wilson is referring, however, we reject his contention that the rule of *James* was violated. *James* applies only to *hearsay* statements of coconspirators. *See United States v. Grassi*, 616 F.2d at 1300. None of the evidence upon which we rely to uphold Wilson's conspiracy conviction was hearsay. Instead, the evidence involved the witnesses' observations and personal knowledge of the acts of and arrangements between Wilson, Counter, and other persons. We therefore reject Wilson's *James* claim.

2. Possession Count [6]

Wilson next challenges his conviction for possession of heroin with intent to distribute it. Finding the evidence insufficient, we reverse.

The evidence introduced to prove Wilson's guilt under this count indicates that on April 3, 1978, the Dallas police received a tip from an informant that persons at the 3700 block of Dildock Street in Dallas, Texas, were in possession of and selling heroin. Two Dallas police narcotics officers went to that location and found Wilson and two other men engaged in a small stakes dice game. The officers discovered on the ground in some bushes about ten feet from the two men two contraceptive prophylactics containing forty-four [7] capsules of heroin. Wilson had no drugs on him. He was arrested along with the other two men, but never was prosecuted by the State of Texas for this incident. Wilson subsequently was

indicted by a federal grand jury for possession with intent to distribute heroin for this same occurrence.

■ Possession of a controlled substance with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1976), may be either actual or constructive. *United States v. Moreno*, 649 F.2d at 312; *United States v. Martinez*, 588 F.2d 495, 498 (5th Cir. 1979). Constructive possession may be established by a showing of "ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *United States v. Moreno*, 649 F.2d at 312 (quoting *United States v. Martinez*, 588 F.2d at 498). Like actual possession, constructive possession may be exclusive or joint, and may be proved by either direct or circumstantial evidence. *Id.*

■ Since Wilson was not in actual possession of any drugs during the incident on April 3, 1978, his conviction on Count 9 may be sustained only upon a constructive possession theory. The evidence presented, however, is insufficient to establish constructive possession. The evidence fails to demonstrate that Wilson had any dominion or control over the forty-four heroin capsules. Instead it shows only that Wilson along with other persons was in proximity to the heroin. "[M]ere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession." *United States v. Moreno*, 649 F.2d at 312 (quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973)). That an informant had given a tip that people in the area were in possession of heroin does not add significantly to the evidence of possession.

---

**6.** Since we vacate the special parole term on Wilson's conspiracy conviction, *see* part V, *infra*, thereby rendering the sentences on his convictions no longer concurrent, it becomes necessary for us to address Wilson's claim regarding the sufficiency of the evidence on his remaining two convictions.

**7.** There is some conflict in the record as to whether forty-four or forty-two capsules were found.

In support of its argument that Wilson was in constructive possession of the heroin, the government relies upon *United States v. Garza*, 531 F.2d 309 (5th Cir.), *cert. denied*, 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976), and *United States v. Ratcliffe*, 550 F.2d 431 (9th Cir. 1977). Those cases clearly do not control, however. In *Garza*, the defendant was arrested at night, wearing dark clothing, lying face down about fifty yards from the Mexican border in an area known to be a crossing point for traffickers in contraband. When the defendant was discovered he had a .22 magnum pistol in one hand, one-half of a pair of binoculars in the other, and a .38 pistol in his pocket. Marijuana was in his hair, on his cap, and inside his jacket pockets. The agent who discovered him backtracked along the defendant's clearly visible footprints and discovered a cache of eleven one hundred pound bags of marijuana. In *Ratcliffe*, one defendant flew an aircraft from California to Mexico, picked up a load of marijuana, flew back to California, landed on a private air strip, and assisted in the unloading of the marijuana from the airplane. The other defendant under a false name purchased the airplane used, drove the pilot and another codefendant to the airport on the day they left for Mexico, waited at the airport for their return, and assisted in the unloading of the marijuana. Rather than support the government's position, these two cases highlight the inadequacy of the evidence of constructive possession in the instant case.

Since we find that the evidence that Wilson was in possession, actual or constructive, of the forty-four heroin capsules discovered on the ground in nearby bushes was insufficient, we reverse his conviction under Count 9 for possession of heroin with intent to distribute it.

### 3. Distribution Count

Wilson next contends that the evidence was insufficient to support his conviction under Count 18 for distribution of heroin. We agree.

Count 18 of the indictment alleges that, on or about June 29, 1978, Wilson distributed twenty-five capsules of heroin to Glen Ray Johnson, and that Larry Don Counter aided and abetted Wilson. The indictment also charges Wilson with the offense of aiding and abetting the distribution.[8]

The evidence shows that, on June 29, 1978, Wilson accompanied Counter when Counter, not Wilson, gave Glen Ray Johnson twenty-five heroin capsules for further distribution. Wilson said and did nothing during the transaction. The evidence further shows that Wilson then assisted Johnson in selling the twenty-five heroin capsules to third parties. Johnson sold about two of the capsules, keeping the money as his share, and Wilson sold the remaining capsules. There is no evidence, however, indicating any transference of any money from Johnson to Wilson or from Wilson to Counter as a result of these sales.

In our view, this evidence is insufficient to establish that Wilson committed the offense, narrowly charged in Count 18, that he had distributed twenty-five heroin capsules to Johnson. The term "distribute," within the meaning of 21 U.S.C. § 841(a)(1), means "to deliver . . . a controlled substance." 21 U.S.C. § 802(11) (1976). "Deliver" in this usage means "the actual, constructive, or attempted transfer of a controlled substance, whether or not there exists an agency relationship." 21 U.S.C. § 802(8) (1976). Since there clearly was no actual or attempted transfer of heroin by Wilson to Johnson, any delivery between these two men would have to have been constructive, with Counter having made the actual transfer to Johnson.

Wilson was certain to have known that the substance Counter handed to Johnson was heroin. The assistance Wilson subsequently gave to Johnson in selling the heroin to third parties indicates such knowl-

---

**8.** 18 U.S.C. § 2 (1976), providing for the punishment as principals of those who aid and abet in the commission of a crime, is cited at the end of Count 18, along with 21 U.S.C. § 841(a)(1) (1976). Although the citation to 18 U.S.C. § 2 apparently refers particularly to the conduct of Counter, we accept it as also referring to the acts of Wilson.

edge.[9] Lacking in this case, however, is the type of relationship between Counter and Wilson or certain acts on Wilson's part that would support a finding of constructive distribution. Constructive distribution has been found to be established when the defendant had authority or control over the actions of the actual transferor during the transfer. *See United States v. Waller*, 503 F.2d 1014, 1015–16 (7th Cir. 1974), *cert. denied*, 420 U.S. 932, 95 S.Ct. 1137, 43 L.Ed.2d 406 (1975) (defendant instructed daughter to "get" bags of heroin for informant). Constructive distribution also has been found when the defendant arranges the distribution, and there is an equal or "partnership" relationship between the defendant and the actual transferor in the distribution, *see United States v. Oquendo*, 505 F.2d 1307, 1310 (5th Cir. 1975), or when there is an understanding between the defendant and the actual transferor and transferee that the transferor will act in defendant's stead if the defendant is unavailable to make the transfer himself. *See United States v. Witt*, 618 F.2d 283, 285 (5th Cir.), *cert. denied*, 449 U.S. 882, 101 S.Ct. 234, 66 L.Ed.2d 107 (1980); *United States v. Felts*, 497 F.2d 80 (5th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 628, 42 L.Ed.2d 646 (1974). In addition, "[a]ctivities in furtherance of the ultimate sale—such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drug—are sufficient to establish distribution." *United States v. Wigley*, 627 F.2d 224, 226 (10th Cir. 1980) (citations omitted); *see also United States v. Chester*, 537 F.2d 173 (5th Cir.), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1120, 51 L.Ed.2d 548 (1977).

None of these arrangements or actions are involved in this case. Wilson had a working relationship with Counter to the extent that he was a street dealer for Counter, but his relationship was such that he did not have any authority or control whatsoever over Counter's actions in distributing the heroin to Johnson on this occasion. In the same vein, there was no understanding between Counter and Wilson on this occasion to the effect that Counter merely was making the delivery in Wilson's stead. Moreover, Wilson engaged in no activity in furtherance of this distribution to Johnson. He merely accompanied Counter and stood mutely by as the transfer took place.[10] His mere presence and association with Counter are insufficient to establish that he distributed the heroin. *See United States v. Harold*, 531 F.2d 704, 705–06 (5th Cir. 1976); *United States v. Horton*, 488 F.2d 374, 381–82 (5th Cir. 1973), *cert. denied*, 416 U.S. 993, 94 S.Ct. 2405, 40 L.Ed.2d 772 (1974); *United States v. Duff*, 332 F.2d 702, 708 (6th Cir. 1964). The evidence demonstrates that Wilson in effect had neither actual nor constructive possession of the twenty-five heroin capsules Counter distributed to Johnson. "As a matter of logic, a conviction for distribution cannot stand unless there is first possession with intent to distribute." *United States v. Zule*, 581 F.2d 1218, 1221 (5th Cir. 1978) (citing *United States v. Littrell*, 574 F.2d 828 (5th Cir. 1978)).

Neither can Wilson's conviction on Count 18 be sustained upon the theory that he aided and abetted in this particular episode involving the distribution of heroin. Although Wilson was indicted under 18 U.S.C. § 2 for aiding and abetting the of-

9. Wilson's efforts in helping Johnson sell the heroin capsules to third parties are not covered by Count 18. Count 18 charges Wilson with delivery of heroin *to Johnson*. The transfer to Johnson already had been completed once Wilson began to assist Johnson in selling the heroin to third parties. These sales to third parties constituted separate deliveries, for which Wilson was not indicted. Accordingly, while these sales may be considered as reflecting on Wilson's knowledge of the substance Counter gave Johnson, they cannot be considered as a

violation of 21 U.S.C. § 841(a)(1) as charged in Count 18.

10. Glen Ray Johnson testified at trial that after he received the twenty-five heroin capsules, he was told by Counter to give Wilson the money obtained from the sale of the capsules to third parties. A hearsay objection to this testimony was properly sustained, however. *See, e. g., Broadway v. City of Montgomery, Alabama*, 530 F.2d 657, 661 n.6 (5th Cir. 1976); *United States v. Black*, 436 F.2d 838, 840 (5th Cir. 1971).

fense under 21 U.S.C. § 841(a)(1), as well as for commission of the distribution offense, the district court gave no jury instruction on aiding and abetting in connection with Wilson. Wilson's conviction on Count 18 therefore cannot rest upon this theory. *United States v. Maspero*, 496 F.2d 1354, 1359 (5th Cir. 1974). We also may not uphold Wilson's Count 18 conviction upon the *Pinkerton* theory, *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), which holds that the acts of one coconspirator may be attributed as a substantive offense to another coconspirator even without the latter's knowledge. *United States v. Michel*, 588 F.2d 986, 999 (5th Cir. 1979). The jury was not charged on the *Pinkerton* theory. *United States v. Maspero*, 496 F.2d at 1359 n. 4.

We accordingly reverse Wilson's conviction on Count 18 for distribution of heroin.

#### B. Hendrix

##### 1. Conspiracy Count

As did Wilson with respect to his conspiracy conviction, Hendrix contends that the evidence was insufficient to support his conviction on Count 1 for conspiracy to distribute heroin. We are not persuaded.

Hendrix first claims that there is insufficient evidence to support his conspiracy conviction because there is no evidence that he was involved in any overt acts listed in Count 1. This argument is without merit. As we have already shown, the government need not prove any overt act in furtherance of the conspiracy in a prosecution under 21 U.S.C. § 846. *United States v. Robinson*, 591 F.2d 1202, 1205 (5th Cir. 1979); *United States v. Gordon*, 580 F.2d at 834. In addition, the government is not limited in its proof of a conspiracy to the overt acts alleged in the indictment. *United States v. Elliott*, 571 F.2d 880, 911 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

Hendrix further argues that there was insufficient evidence showing that he willfully participated in the conspiracy. The evidence, however, contradicts his as-

sertion. Robert Earl Turner, a distributor for Larry Counter who appeared as a government witness, testified that on one occasion he (Turner) accompanied Counter while Counter supplied Hendrix and other heroin street dealers with heroin. When approached by Counter on that occasion, Hendrix indicated to Counter that he had sold out of heroin and needed more to sell. In response, Counter gave Hendrix a package containing heroin capsules. Turner further testified that on several other occasions he saw Counter collect proceeds from heroin sales from Hendrix as well as other street dealers.

Otis Frank Thomas, a heroin dealer for Larry Counter, testified from personal knowledge that Hendrix sold heroin for Counter. Thomas also recounted an incident in which he wanted to make a sale of heroin but had exhausted his supply, so he obtained a heroin capsule for the sale from Hendrix, who was standing nearby.

Two other witnesses, Herschell Lester Lincoln and Jesse Turner, both heroin users, testified that they had purchased heroin from Hendrix. Finally, Robert Earl Turner testified that after he had been arrested Hendrix told him that nothing would happen "if everybody kept their mouth hushed" and that he, Hendrix, would be able to take care of himself in any event.

Contrary to appellant Hendrix's claim, this evidence clearly establishes the requisite elements of the conspiracy offense. The evidence shows that Hendrix knew of the conspiracy in South Dallas to distribute heroin, and that he voluntarily participated in the conspiracy. *United States v. Middlebrooks*, 618 F.2d at 278.

Like Wilson, however, Hendrix makes a generalized claim that the evidence introduced against him regarding his participation in the conspiracy violated the rule of *James*. We dispose of this claim in the same manner in which we disposed of Wilson's *James* claim, *supra*, finding as we do that none of the evidence on which we rely was hearsay and that, therefore, the *James* rule is inapplicable. *United States v. Grassi*, 616 F.2d at 1300.

### 2. Possession Count [11]

Count 4 of the indictment charged that on or about August 29, 1977, Hendrix and three other men with intent to distribute possessed approximately 300 capsules of heroin. Hendrix was convicted on this count. He now contends that there was no evidence at all to sustain this conviction. Since the government concedes this point, and since our review of the record reveals no evidence to support the allegation in Count 4, we reverse Hendrix's conviction on this count.

## II. Joinder

Wilson and Hendrix both contend, for the first time on appeal, that their trial was improperly joined with that of Robert Earl Turner under Rule 8(b) of the Federal Rules of Criminal Procedure.[12] Wilson argues that the indictment and the government's evidence adduced at trial show that multiple, separate conspiracies, most of which he had nothing to do with, rather than the single, overall conspiracy alleged in Count 1 of the indictment, were involved. It is urged, therefore, that separate offenses and unrelated defendants were improperly joined in one count. Hendrix, advancing a similar argument, contends that since the overt acts alleged in Count 1 of the indictment are not acts which both he and Turner committed, the indictment alleges more than one conspiracy and improperly joins them in a single count.

---

**11.** Consideration of the sufficiency of the evidence on this count is made necessary by the elimination of the concurrency of Hendrix's sentences on his two convictions as a result of our vacating the special parole term imposed upon Hendrix's conspiracy conviction. *See* part V, *infra*.

**12.** Rule 8(b) of the Federal Rules of Criminal Procedure provides:

Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

■ Appellants failed to raise their misjoinder claims prior to trial, or at any point in the proceeding below. Because they failed to raise their misjoinder claims prior to trial, they may not advance them now. Fed.R.Crim.P. 12(b)(2); *United States v. Busard*, 524 F.2d 72, 73 (5th Cir. 1975), *cert. denied*, 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976); *United States v. Gougis*, 374 F.2d 758, 764 (7th Cir. 1967). Further, we find no plain error in the joinder of appellants with Turner in the indictment or trial. Fed.R.Crim.P. 52(b); *United States v. Ratner*, 502 F.2d 1300, 1302–03 (5th Cir. 1974), *cert. denied*, 423 U.S. 898, 96 S.Ct. 202, 46 L.Ed.2d 132 (1975).

## III. Severance

Appellants advance the alternative claim that the district court abused its discretion in denying their repeated motions under Rule 14 of the Federal Rules of Criminal Procedure [13] to sever their trial from that of Robert Earl Turner, a codefendant and a chief prosecution witness against appellants on the conspiracy count.

Robert Earl Turner was indicted in Count 1 of the indictment as a coconspirator with appellants. He negotiated a plea bargain with the prosecution and agreed to testify as a government witness at trial. The district court rejected the plea bargain. Turner changed his plea to "not guilty" but expressed a continuing desire to testify for the government. The government then moved unsuccessfully for dismissal of the

---

**13.** Fed.R.Crim.P. 14 provides:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

indictment as to Turner. It then joined in appellants' respective motions to sever their trial from that of Turner. The trial court denied these pre-trial motions for severance, as well as similar motions made by appellants throughout the trial. Turner subsequently testified at trial, admitting his own guilt and inculpating both appellants in the conspiracy.

Appellants now contend that this admission of guilt and ensuing testimony from a codefendant charged with the same offense was highly prejudicial to them. They argue that they were prejudiced by the impact on the jury of a codefendant admitting guilt and then inculpating his codefendants, by the jury's supposed inability to separate the evidence as to each defendant, and by Turner's remaining in the courtroom throughout the trial as a result of being exempt as a defendant from witness exclusion. For these reasons, appellants contend the district court abused its discretion in denying their motions for severance. After carefully reviewing the circumstances of Turner's testimony, the trial court's instructions to the jury, and the relevant law on the subject, we uphold the refusals of the trial court to grant severance.

■ Generally, persons jointly indicted should be tried together, especially in conspiracy cases. *United States v. Edwards*, 488 F.2d 1154, 1160 (5th Cir. 1974). Once defendants have been properly joined for trial under Fed.R.Crim.P. 8(b), the decision whether to grant a motion for severance under Fed.R.Crim.P. 14 is within the discretion of the trial court. *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980). The trial court may grant a severance if it appears that a party is prejudiced by a joint trial, Fed.R.Crim.P. 14.

■ In this case, as the trial got under-way there was no way of knowing whether or not Turner would testify. And this doubt continued until he actually did so.

The plea bargain had been rejected, and he could have made his Fifth Amendment claim at any time. Further, he could not be excluded from the courtroom as a potential witness because he was a defendant. While the entire trial must be monitored for prejudice justifying severance, *United States v. Johnson*, 478 F.2d 1129, 1132 (5th Cir. 1973), clearly no anticipatory severance was justified.

■ Once Turner did testify, the analysis which follows reveals that no compelling prejudice resulted which required severance. The standard for the review of the trial court's decision is "abuse of discretion." *United States v. Crawford*, 581 F.2d 489, 491 (5th Cir. 1978). In order to demonstrate an abuse of discretion by the trial court, the defendant has the very heavy burden of establishing that he was unable to obtain a fair trial without a severance and that he suffered compelling prejudice which the trial court could not prevent. *United States v. Mota*, 598 F.2d 995, 1000 (5th Cir. 1979), *cert. denied*, 444 U.S. 1084, 100 S.Ct. 1042, 62 L.Ed.2d 770 (1980) (quoting *United States v. Swanson*, 572 F.2d 523, 528 (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978)). "A mere showing of some prejudice has usually been insufficient. . . ." *United States v. Perez*, 489 F.2d 51, 65 (5th Cir. 1973), *cert. denied*, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).

Admittedly, it is unusual for a codefendant in a criminal trial to take a stand as a government witness, confess his guilt, and then inculpate his fellow defendants for the same crime.[14] The codefendant's self-incrimination before the jury certainly has some impact upon the credibility of his testimony regarding the complicity of the other defendants. It is not shown in this case, however, that Turner's testimony gave rise to compelling prejudice to appellants. It is significant that Turner still would have

---

**14.** Since Turner admitted rather than denied his own guilt, this case is not one involving inconsistent defenses—one ground of compelling prejudice when the defenses conflict to the point of being irreconcilable and mutually ex-clusive. *See United States v. Herring*, 602 F.2d 1220, 1225 (5th Cir. 1979), *cert. denied*, 444 U.S. 1046, 100 S.Ct. 734, 62 L.Ed.2d 732 (1980); *United States v. Crawford*, 581 F.2d at 491.

been available to testify as a government witness in appellants' trial had appellants' trial been severed from that of Turner. In *United States v. Dearden*, 546 F.2d 622, 626 (5th Cir.), *cert. denied*, 434 U.S. 902, 98 S.Ct. 296, 54 L.Ed.2d 188 (1977), this Court held that the trial court did not abuse its discretion in denying the defendant's motion to sever his trial from that of the codefendants on the ground that the admitted guilt contained in the testimony of nondefendant coconspirators might be transferred by the jury to the defendant. We reasoned that the coconspirators who testified for the government "would have been as available to testify for the prosecution in a separate trial involving only [the defendant]." *Id.* at 626. Although the coconspirators were not codefendants, our decision turned on their availability as witnesses in a separate trial. Had they been codefendants, as occurred here, the prejudice to the defendant at most would have been only slightly increased.

Similarly, in the case at hand, Turner would have been as available to testify for the government in a separate trial involving only these appellants. The substance and practical effect of his testimony was the same as if appellants had been tried separately from him. In a separate trial, the government would have revealed Turner's unsuccessful plea bargain, as it did here, and Turner would have testified, subject to cross examination,[15] about the involvement of appellants and himself in the heroin distribution conspiracy. In sum, "there [was] no evidence . . . that was admissible at the joint trial . . . that would have been inadmissible if separate trials had been conducted." *United States v. Sambrano*, 505 F.2d 284, 287 (5th Cir. 1974) (citing *United States v. Gentile*, 495 F.2d 626, 632–33 (5th Cir. 1974)); *see also United*

*States v. McPartlin*, 595 F.2d 1321, 1334 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979) (joinder did not result in exclusion or admission of evidence or making of any argument that would not have been excludable, admissible, or made in separate trial). The primary practical difference between this case and a separate trial is that, in this case, Turner remained in the courtroom as a defendant during the trial rather than being excluded, as would be nondefendant witnesses. Appellants have failed to show any compelling prejudice from such presence. That a defendant might have a better chance of acquittal if tried separately alone is not a sufficient ground for severance. *United States v. Morrow*, 537 F.2d 120, 137 (5th Cir. 1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

■ Any prejudice to appellants from the joint trial was further reduced by the trial court's instructions to the jury that a witness who testifies pursuant to a plea bargain agreement has a motive to testify falsely or in a manner that furthers his own interests. *See United States v. Miller*, 513 F.2d 791, 793 (5th Cir. 1975) (no abuse in denying severance since self interest, among other things, of codefendant who testified for government and inculpated defendant was "amply demonstrated" to jury).[16] In addition, potential jury confusion in separating the evidence was minimized by the trial court's instruction to the jury to consider the evidence individually against each defendant. *See United States v. Hurt*, 476 F.2d 1164 (D.C. Cir. 1973) (similar jury instruction as factor reducing prejudice of joint trial).

We therefore are led to conclude that appellants did not suffer compelling preju-

---

15. Since Turner was cross-examined by both appellants, the problem, present in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), of a defendant's not being able to cross-examine a codefendant who inculpates him is not present here. *See United States v. Pentado*, 463 F.2d 355, 360–61 (5th Cir.), *cert. denied*, 409 U.S. 1079, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972).

16. Turner actually was not testifying pursuant to a plea bargain agreement because the court had rejected it. The instruction was relevant and important, however, because the facts concerning the plea bargain were before the jury, and it was obvious that Turner was testifying in the hope that there might be some mitigation of punishment in his case because of his cooperation with the prosecution.

dice from their joint trial with Turner and that, accordingly, the trial court did not abuse its discretion in denying their motions for severance.

## IV. Speedy Trial

Wilson contends that the government violated his right to a speedy trial under the Speedy Trial Act of 1974, 18 U.S.C. § 3161, *et seq.* (1976), and under the Sixth Amendment to the United States Constitution. On April 3, 1978, Wilson was arrested by a Dallas police officer for the incident which later served as the basis for his federal indictment in Count 9 for possession of heroin with intent to distribute it. No state prosecution developed from this incident. Over one year later, on May 30, 1979, the federal indictment charging Wilson with the offense was filed. Wilson claims that this delay between his state arrest and the filing of the federal indictment against him violated his statutory and constitutional right to a speedy trial and that, therefore, his indictment should have been dismissed.

Since the sanctions of the Speedy Trial Act, 18 U.S.C. § 3162 (1976), did not become effective until July 1, 1980, *id.* at § 3163(c), Wilson's statutory claim in effect arises not under the Speedy Trial Act, but under the transitional plan adopted by the Northern District of Texas during the interim period before the effective date of the sanction provisions. *See* 18 U.S.C. § 3165; *United States v. Phillips*, 569 F.2d 1315, 1316–17 (5th Cir. 1978).

■ In any event, Wilson's allegation of a violation of his statutory speedy trial right is without merit. Contrary to the assumption underlying Wilson's claim, a state arrest does not trigger the time provisions of either the federal Speedy Trial Act, *see United States v. Phillips*, 569 F.2d at 1317, or, by implication, the local speedy trial plans devised by the federal districts pursuant to 18 U.S.C. § 3165. This rule is

an outgrowth of the doctrine of dual sovereignty, which recognizes that "the federal government is not bound by the actions of state authorities and that successive state and federal prosecutions are constitutionally permissible." Id.[17]

■ In addressing the alleged violation of Wilson's speedy trial constitutional right under the Sixth Amendment, we consider (1) the length of the delay, (2) the reason for the delay, (3) the circumstances surrounding defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972); *United States v. Hill*, 622 F.2d 900, 908–09 (5th Cir. 1980). Without the necessity of analyzing each of these four factors, we conclude that Wilson's claim falters on the fourth, i. e., prejudice to the defendant. Wilson has failed to demonstrate that he suffered any prejudice as the result of any delay by the federal government in bringing him to trial. Wilson was not held in jail following his state arrest. Further, there is no showing that he was subjected to anxiety or oppressive pretrial incarceration, or that his defense was impaired in any way as a result of the government's actions. *See United States v. Mitchell*, 615 F.2d 1133, 1133–34 (5th Cir. 1980). Accordingly we reject his claim of a constitutional violation.

## V. Special Parole Term

Although none of the parties has raised the matter, we point out that there is a defect in the sentence imposed upon each appellant on his conviction on the conspiracy count. In addition to eight years imprisonment, the district court sentenced Wilson and Hendrix each to a special parole term of four years on each one's conspiracy conviction. This latter sentence is not authorized under the law. Section 846, under

---

**17.** Wilson seeks to distinguish *Phillips* on the ground that in that case state and federal officials were involved in the investigation and development of the case, while the investigation and development of the instant case were conducted entirely by state police. However, the concept of dual sovereignty, and the policy

consideration, discussed in *Phillips*, 569 F.2d at 1317, of avoiding the crowding of the federal court calendar remain persuasive even where the case is developed wholly by state officials. We cannot hold that state officials can force the federal government to act when it is not yet ready to do so.

which Wilson and Hendrix were convicted on Count 1, does not authorize the imposition of a special parole term. *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). Accordingly, the special parole term imposed upon each appellant under his conspiracy conviction is vacated. *United States v. Broussard*, 645 F.2d 504, 505 (5th Cir. 1981); *Cates v. United States*, 626 F.2d 399, 400 (5th Cir. 1980).

We have carefully and thoroughly considered appellants' remaining contentions on appeal, and find them to be without merit.

Since we conclude that the evidence on the conspiracy count was sufficient as to each appellant and that appellants' other attacks on their respective conspiracy convictions are without merit, we affirm the conspiracy conviction of each appellant. Because of the insufficiency of the evidence, however, we reverse Wilson's convictions for possession with intent to distribute heroin and for distribution of heroin, as well as Hendrix's conviction for possession with intent to distribute heroin. We also vacate the special parole term imposed upon each appellant under his conspiracy conviction. Since appellants were sentenced to eight years imprisonment on each count, the sentences to run concurrently, the reversal of the convictions on the counts other than the conspiracy counts has no effect upon the eight year sentences of imprisonment on the convictions for conspiracy. These sentences remain intact.

AFFIRMED IN PART, REVERSED IN PART, AND VACATED IN PART.