UNITED STATES of America,
Plaintiff-Appellee,

v.

Enrique Cano SILVA,
Defendant-Appellant.

No. 77–5639.

United States Court of Appeals,
Fifth Circuit.

Sept. 13, 1978.

---

Ray Guy (Court-Appointed), Dallas, Tex., for defendant-appellant.

Enrique Cano Silva, pro se.

J. A. Canales, U. S. Atty., John Potter, George A. Kelt, Jr., Asst. U. S. Attys., Houston Tex., John Patrick Smith, Asst. U. S. Atty., Brownsville, Tex., James R.

Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, SIMPSON and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The appellant was convicted on one count of distributing approximately 2.1 grams of heroin, and a second count of distributing approximately 53.8 grams of cocaine, both in violation of 21 U.S.C. § 841(a)(1) (1971).[1] These arose from the following facts. Around 7:00 p. m. on October 13, 1976, a confidential informant drove undercover Drug Enforcement Administration Agent Tamayo, in the informant's car, to appellant's residence. The informant introduced the individual identified as the appellant to Agent Tamayo. All three remained inside the car while Agent Tamayo and the individual identified as the appellant negotiated for the sale of cocaine and heroin. The informant and Agent Tamayo then left to allow the individual identified as the appellant to obtain the narcotics. They returned, still in the informant's car, at about 9:30 p. m. This time when the individual identified as the appellant got in the car the informant got out and stood near the front where he remained throughout the transaction. Agent Tamayo, while within the car, purchased from the individual identified as the appellant, packages containing approximately 2.1 grams of heroin and approximately 53.8 grams of cocaine. At trial, Agent Tamayo testified to these transactions and also to a continuing series of meetings with the individual identified as the appellant. Agent Tamayo stated that the purpose of the continuing negotiations was to locate the source of supply. No further purchases were made, however, due to the fact that the individual identified as the appellant required front money, which Agent Tamayo was not in a position to give. The appellant defended on the grounds of mistaken identity, contending that he had been framed. This "frame-up" he asserted, was due to his previous law enforcement background.[2] The jury found him guilty on both counts and the court levied a sentence of fifteen years, a three year special parole term, and a $25,000 fine on each count.

In this appeal the appellant raises two issues: (1) whether the district court erred in refusing to order the United States to disclose the identity of its confidential informant; (2) whether the district court erred in permitting testimony as to negotiations for a sale of heroin subsequent to the transaction for which the appellant was charged.

I. Disclosure of Informant

During the course of the trial, appellant moved to disclose the identity of the confidential informant who supposedly had introduced him to the undercover DEA agent. The motion was denied. Upon a subsequent motion, the trial court further conducted a post-trial *in camera* hearing with the informant bearing on the issue of disclosure. Again, disclosure was denied.

The appellant argues that the informant would have provided testimony essential to his defense of mistaken identity. Indeed, there are limitations on the informant's privilege of anonymity, and disclosure will be required where it may be "relevant and helpful to the defense of an accused, or is essential to a fair determination

---

[1] 21 U.S.C. § 841(a)(1) provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

[2] Appellant formerly served as a patrolman and as police chief in Reynosa, Mexico, participating in numerous narcotics busts.

of a cause . . . ." *Roviaro v. United States*, 353 U.S. 53, 60, 61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957). Even so, the question is often a difficult one and must be determined on a case by case basis. As the Supreme Court stated in *Roviaro*,

. . . that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individuals right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informers testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 629. Two of the three factors noted by *Roviaro*; "the possible defenses [and] the possible significance of the informer's testimony," here weigh heavily in favor of disclosure. The appellant asserted only one defense, that of mistaken identity. Therefore, allegedly having no knowledge of the transaction itself, the appellant needed the absent informant in order to refute the undercover DEA agent's testimony. Alternatively, assuming the absent informant would corroborate the agent's testimony, the informant was essential to enable the appellant to develop his theory that he had been framed. Finally, in considering the "other relevant factors," the government offered no substantial reasons for nondisclosure.[3]

■ In applying the *Roviaro* balancing test to the instant case we conclude that the trial court improperly denied appellant access to the informant's identity. In doing so, we are aware that in *United States v. Davis*, 487 F.2d 1249 (5th Cir. 1973) on facts similar to these, the court sustained nondisclosure. In *Davis*, however, numerous corroborative details were present which are absent here. The facts of *Davis* show two agents, instead of a lone agent as in the instant case, participated in the actual transfer of drugs, both of whose accounts were entirely consistent. Moreover, in *Davis*, the agents' court testimony concerning the appellant's identity was corroborated, in detail, by written physical descriptions of the seller made by the testifying agents soon after the crime. Additionally, the agents' testimony was substantiated by the matching of the description on the seller's automobile registration with the description of the automobile noted by the agents as belonging to the seller. Whereas, in the instant case, the informant was the only witness in a position to support or contradict the testimony of the lone agent who participated in the transaction. Also missing in *Davis* was any allegation that the informant might have a revenge motive and might be actively framing the appellant.

## II. Admission of Subsequent Acts

■ The appellant also argues that the trial court erred by admitting testimony as to negotiations for a sale of heroin subsequent to the transaction for which the appellant was charged. This argument is underpinned by the evidentiary principle that the commission of a wholly separate and

---

3. The questioning went as follows:

THE COURT: Let me interrupt you a minute, Mr. Smith. Would you state specifically for the record, sir, the reasons why the government here is reluctant to reveal the name of the informer, and if there are any reasons in addition to the basic policy of the government and the policy of the courts in protecting the identity of the informer, are there any specific reasons that are particularly applicable to this case other than the general policy?

MR. SMITH: Other than the general policy, this informant is an older man. He is vulnerable to being attacked and cannot defend himself. He is a long time informant. He has been threatened on many occasions and in fact we could produce testimony that this defendant suspects who the informant is and doesn't think highly of him. (TR. 194, 195).

independent crime is inadmissible as part of the case against the defendant. *See Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 93 L.Ed. 168 (1948). The reason for this rule is that the guilt or innocence of the accused should be established by evidence relevant to the alleged offense being tried, not because the jury may believe the defendant to be a person of bad character or because he committed a similar offense. The courts, however, have carved out a number of exceptions to this general rule and it is the applicability of two of these exceptions which is at issue here.

■ The first arguably applicable exception, involves "knowledge and intent." According to the government, the testimony at trial was properly admitted on the grounds that evidence of the other offenses was admissible to show criminal intent. *See* Fed.R.Evid. 404(b). The law is, however, that before an exception to the general rule excluding evidence as to other crimes can be invoked, the trial court must be satisfied that several prerequisites have been met: (1) there is plain, clear and convincing[4] evidence of a similar offense, (2) the offense is not too remote in time, (3) the element of the prior crime for which there is a recognized exception must be a material issue in the case, (4) there is a substantial need for the probative value of the evidence. *See United States v. San Martin*, 505 F.2d 918 (5th Cir. 1974). The danger of the prejudicial effect of similar offenses is such that all of these prerequisites must be met before the evidence is admitted. *United States v. Goodwin*, 492 F.2d 1141, 1150 (5th Cir. 1974).

■ Applying this test to the present case, the testimony concerning the appellant's subsequent acts clearly fails to meet the third prerequisite and therefore should not have been admitted. In determining that intent was never a material issue, we are guided by the proposition that the materiality of intent depends, not on the statutory definition of the offense, but on the circumstances of the case and on the nature of the defense. *United States v. Adderly*, 529 F.2d 1178, 1181 (5th Cir. 1976). In the present case the defendant's sole defense was that of mistaken identity. This court has acknowledged in *Adderly, supra* at 1181, that a defendant who denies participation in an act raises no discrete issue of intent and if the act be proven the intent will usually be inferred.

■ Raising a second exception, the government argues that the subsequent acts should have been admitted for purposes of showing identity. *See* Fed.R.Evid. 404(b). Once again, we cannot agree. The identity exception has a much more limited scope; it is used either in conjunction with some other basis for admissibility or synonymously with *modus operandi*. *See United States v. Jackson*, 451 F.2d 259 (5th Cir. 1971). A prior or subsequent crime or other incident is not admissible for this purpose merely because it is similar, but only if it bears such a high degree of similarity as to mark it as the handiwork of the accused. *Goodwin, supra* at 1154. No such handiwork was here shown.

The judgment is REVERSED and this case REMANDED for further proceedings consistent with this opinion.

---

4. The continuing viability of the "plain, clear, and convincing" standard is presently before the court en banc on the rehearing of *United States v. Beecham*, 555 F.2d 487 (5th Cir. 1977), rehearing en banc granted 583 F.2d 782, 1977, but whatever disposition is made will not affect the outcome here.