UNITED STATES of America,
Plaintiff-Appellee,

v.

Raymond Dale WITT,
Defendant-Appellant.

No. 79–5322.

United States Court of Appeals,
Fifth Circuit.

June 2, 1980.

Robert W. Knight, Federal Public Defender, Archibald J. Thomas, III, Asst. Federal Public Defender, Jacksonville, Fla., for defendant-appellant.

Gary L. Betz, U. S. Atty., Tampa, Fla., Bernard S. McLendon, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before TJOFLAT, RUBIN and TATE, Circuit Judges.

TJOFLAT, Circuit Judge:

Raymond Dale Witt appeals his convictions on two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (1976). He questions the sufficiency of the evidence on one count, certain evidentiary rulings, and the denial of his motion for a mistrial. Because we find no error, we affirm.

I

Alphonso Duncan, acting as a confidential informant for the Drug Enforcement Administration (DEA), met Witt on January 17 or 18, 1979, at Greyhound Rent-A-Car (Greyhound) in Jacksonville, Florida, where Witt was employed. Duncan hoped to purchase heroin from Witt. In order to win Witt's confidence, Duncan saw Witt at Greyhound several times during the next few days. They discussed drugs and pistols on these occasions, but Duncan was cautioned not to mention drugs when the Greyhound supervisor or customers were present. A heroin transaction was arranged for noon, January 25, and the DEA supplied Duncan with $200 to make the buy. Duncan then went to Greyhound, gave the money to Witt, and was told to wait. Witt, in turn, sent Waverly Watson, a Greyhound employee, to get the heroin. On his return, Watson handed Witt a small package. Witt gave it to Duncan with instructions to go into the bathroom to count the packets of heroin contained in the package. While Duncan was counting the packets, Witt entered the bathroom, opened one of the packets, and said that the heroin looked good because of its color. The deal was concluded, and Duncan turned over to the DEA thirty packets of heroin. The January 25 transaction formed the basis of count one of the indictment.

Later the same day, Duncan, accompanied by DEA Special Agent Ellis Dean, who was acting in an undercover role, returned to the Greyhound office and met Witt and Watson. Dean wanted to purchase an ounce of heroin. Witt was out of supply, but told Dean, "My people are getting a package on the 26th." Record, vol. II, at 117. Witt offered to sell some marijuana, but Dean chose to wait until the heroin arrived. The record does not indicate whether Dean ever returned to consummate the deal.

A second sale between Witt and Duncan was arranged for February 2, 1979. Again, Duncan received money from the DEA and went to Greyhound to make the buy. Witt was busy with a customer, so Duncan, complying with Witt's earlier instructions, gave the money to Watson, who brought the heroin to Duncan. This drug purchase was the basis of the second count of the indictment.

II

Witt first contends that the evidence on count two was insufficient to take the case to the jury; the trial court therefore erred by not granting a judgment of acquittal. The gist of Witt's argument is that Watson was the one who handled the deal. Witt was busy serving a customer and insists that he could not have known that the sale was taking place.

In assessing the sufficiency of the evidence, we must view it in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The jurors' verdict will be upheld unless we can say that they must, necessarily, have entertained a reasonable doubt of the defendant's guilt. *United States v. Jackson*, 588 F.2d 1046, 1056 (5th Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979). This test

is to be applied whether the evidence is direct or circumstantial. *Id.; United States v. Carrillo*, 565 F.2d 1323 (5th Cir.), *cert. denied sub nom. Montoya v. United States*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978). In this case, there was ample proof to take the second count to the jury.

As we have stated, Duncan's testimony was that he and Witt arranged the heroin transactions of January 25 and February 2. Record, vol. II, at 73–76, 79, 85. They had an understanding that if Witt happened to be tied up with a customer, Duncan was to see Watson. *Id.* at 48–49, 81, 84, 88, 96, 100. The Government's theory, as the jury was properly instructed, was that Witt had been either the principal or a joint venturer with Watson. *Id.* at 164. On the evidence before it, the jury was entitled to conclude that Witt had been in charge of the trafficking, with Watson his agent, or that they had been jointly involved.

### III

Witt also contends that reversible error occurred when the trial judge admitted evidence showing his involvement in crimes not charged in the indictment. He cites Duncan's testimony concerning the discussions about drugs and pistols prior to their first drug transaction.[1] Also cited is Dean's account of his visit to the Greyhound office in an attempt to purchase heroin. This evidence, Witt argues, was introduced simply to show that he was a person of bad character and that he had acted in conformity therewith during the heroin sales of January 25 and February 2. If this had been the purpose of the evidence, it would clearly have been inadmissible. Fed.R. Evid. 404.[2] We are convinced, however, that the evidence had a valid basis for admission and was not introduced for such an impermissible purpose.

The critical issue in the trial of the count two offense, involving the money-drug exchange with Watson, was whether Witt had participated willfully in the transaction. Though Witt did not take the stand to deny participation in the episode, his trial tactic, nevertheless, was to argue that he had not been involved—that it was Watson's own deal. Thus, in order to carry the day it was necessary for the Government to show that Witt and Watson were in it together, or, better yet, that Witt was in charge. We are satisfied that the testimony of Duncan and Dean now in question was introduced to satisfy this burden.

It is true that the questioned testimony revealed "other crimes, wrongs or acts" on Witt's part, thus tending to show bad character. At the same time, however, the testimony went straight to the heart of the issue Witt had raised—his role in the count two transaction. To prove that Witt was in control of the heroin distribution, the prosecutor asked Duncan whom he had gone to see at Greyhound to set up the heroin buy and what had transpired. Duncan respond-

1. The Record does not reveal whether the discussions about pistols involved illegal activity. Record, vol. II, at 98–99. Witt, nevertheless, also contends this evidence impermissibly was used to show bad character.

2. Rule 404. *Character Evidence Not Admissible To Prove Conduct; Exceptions; Other Crimes*
(a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
(1) *Character of accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
(2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
(3) *Character of witness.* Evidence of the character of a witness, as provided in rules 607, 608, and 609.
(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ed by identifying Witt as the contact and relating Witt's revelations about drug trafficking. Witt mentioned pistols in that context. Witt and Duncan eventually struck the bargains carried out on January 25 and February 2. Dean's testimony also was highly probative of Witt's entrepreneurial role. In short, there can be no question that this evidence served to show, within the intendment of rule 404(b), the defendant's opportunity, intent, plan and knowledge.

Witt nevertheless contends that our decision in *United States v. Silva*, 580 F.2d 144 (5th Cir. 1978) required the exclusion of the challenged testimony. We find *Silva* inapposite. In *Silva*, also a narcotics case, the sole defense was mistaken identity. The defendant's intent was not in issue; in such a case a defendant tacitly, if not explicitly, admits that whoever committed the offense did so with the requisite mens rea. *See United States v. Adderly*, 529 F.2d 1178, 1181 (5th Cir. 1976). Consequently, the evidence of "other" drug trafficking introduced to prove Silva's intent was irrelevant—other than to show, impermissibly, that (1) he was of bad character and (2) he had conducted himself in conformity therewith in committing the offense on trial. *See* Fed.R.Evid. 404(a), note 2 *supra*. We observed that even though intent may be an element of the crime charged, whether the element is susceptible of proof depends on whether it is an issue in the case the moment the evidence is offered. 580 F.2d at 148. *See United States v. Ring*, 513 F.2d 1001 (6th Cir. 1975).

This case is not a case like *Silva*. Witt never claimed alibi, mistaken identity, or any similar defense which, if established, would have made it impossible for him to have committed the offense. Witt was the major actor in the January 25 transaction, and was present during the February 2 sale. His connection with the February 2 transaction was the precise question the jury had to decide. This episode cannot be viewed in isolation. It was part of an indictment charging the defendant with committing the same crime less than a week earlier; had the earlier crime not been charged, the evidence thereof still would have been admissible under rule 404(b) to show Witt's role in a plan of drug trafficking. In sum, Witt's knowledge with respect to the February 2 transaction was in issue in this case, and the trial judge proceeded correctly in permitting Duncan and Dean to testify about the other acts and conduct of Witt.[3]

Witt advances another ground for excluding this testimony. During the pretrial omnibus discovery proceedings, the Government indicated that it would not rely on "prior acts or convictions of a similar nature for proof of knowledge, intent, motive, scheme, identity, design, plan, re gestate [sic] or negate accident, mistake, or entrapment." Record, vol. I, at 13. Because of this, Witt argues, the prosecutor was precluded from eliciting the challenged testimony from Duncan and Dean. Witt never presented this argument to the district judge. We have held that a violation of an omnibus discovery agreement must be called to the attention of the trial judge in order to be reviewable on appeal. *United States v. Urdiales*, 523 F.2d 1245, 1247 (5th Cir. 1975), *cert. denied*, 434 U.S. 1071, 98

---

3. Witt also claims that it was fundamental error for the trial court not to instruct, sua sponte, the jury that the testimony about the other criminal activity could be considered only to show those purposes permissible under rule 404(b). Witt did not request a cautionary instruction, so we must evaluate his claim to see if the failure to give a limiting instruction significantly and substantially prejudiced the defendant. *United States v. Hemming*, 592 F.2d 866 (5th Cir. 1979). The testimony, for which Witt now claims a cautionary instruction should have been given, revealed no more than a possible conspiracy to deal in drugs, the strongest of which was heroin. The indictment here charged Witt with two counts of distributing heroin. The trial court in fact did give a general cautionary instruction: "I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in this case. The defendant is not on trial for any act not in the Indictment." Record, vol. II, at 169. We hold that the failure of the court to give a more detailed cautionary instruction did not substantially prejudice Witt, and therefore find no reversible error.

S.Ct. 1253, 55 L.Ed.2d 774 (1978). We, therefore, cannot find reversible error.[4]

## IV

■ Witt's final argument is that the trial judge erred in failing to grant a mistrial at the conclusion of the cross-examination of Duncan. During cross-examination, Witt's counsel questioned Duncan about his discussions with the prosecutor:

Q How many times have you discussed the facts of this case with the DEA agents or the prosecutor?

A I haven't discussed it. The only time I discussed it was when I had to come in front of you one day. I think that was February 16th.

Q That was before your deposition?

A I went in front of the Grand Jury. I went in front of you and another attorney and I was called up after they had a different attorney. I was called up to talk with the new prosecuting attorney for this case. Other than that I don't discuss it. I don't even come out in the open.

Q You would say about four or five times?

A Just the times I was summonsed to appear in front of the lawyers and the Grand Jury.

Q You mentioned that—when was that last time you talked to a prosecutor about the facts of this case?

A It was Friday at approximately 2:00 o'clock. I met the prosecuting attorney.

Q Just last Friday?

A Yes, sir, the new prosecuting attorney.

Q You discussed the whole case?

A No, sir, something concerning me, my life.

Q About your what?

A About the contract.

Record, Vol. II, at 91–92.

Following this response, defense counsel, at a sidebar conference, requested a mistrial, claiming that the jury could well infer from Duncan's reference to "the contract" that Witt had threatened Duncan's life. Earlier, before the grand jury, Duncan had described an attempt on his life. The trial court considered it highly unlikely that the jury would infer from Duncan's testimony that his life had been threatened, and therefore refused to grant a mistrial; instead it offered to instruct the jury to disregard Duncan's reference to the contract. The defense declined the offer, believing that an instruction would only cause the jury to engage in dangerous speculation. *Id.* at 93.

Because Duncan's comment about the contract was solicited by defense counsel, *see United States v. Doran*, 564 F.2d 1176, 1177 (5th Cir. 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978), and because the comment was so vague, we find no error. Witt's suggestion that the prejudicial words were not responsive to the question adds nothing to his argument. This is a classic case of counsel's failure to restrict his cross-examination to matters within counsel's knowledge; moreover, the form of the question, "About your what?", permitted a narrative response that could have been far more damaging than the one counsel received. Duncan's answer was responsive to the question. If anything, the answer was too brief, but the defense was the beneficiary of the imcompleteness. It cannot now turn its tactical mistake into reversible error. We find no abuse of the trial court's discretion in denying a mistrial under these circumstances.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

4. We note in passing that the Government provided Witt with the substance of the testimony during the pretrial discovery, so Witt hardly could have been surprised by what eventually transpired.