996 F.2d 1220
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Larry D. SANDERS, Defendant-Appellant.
 No. 92-1557.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 2, 1993.
Decided June 8, 1993.
 
 Before POSNER, COFFEY, Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Larry Darnell Sanders was convicted by a jury of one count of distributing cocaine base (commonly known as "crack"), one count each of aiding and abetting in the distribution of cocaine base, and one count of aiding and abetting in the distribution of cocaine, all in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Sanders to concurrent terms and 63 months imprisonment on each of the three counts, and ordered four (4) years of supervised release. The district court also imposed a $150 special assessment fee against Sanders for his convictions. We affirm.
 
 I. FACTS
 
 2
 East St. Louis Police Officer Edgar Ellis, assigned to the Metropolitan Enforcement Group of Southwestern Illinois ("MEGSI") to investigate narcotics activities, was informed by a confidential informant that narcotics were being sold out of a residence at 1345 North 41st Street, East St. Louis, Illinois. The informant introduced Ellis to the defendant Sanders at the 1345 North 41st Street residence on March 8, 1991. During the initial meeting, Agent Ellis inquired about purchasing a quantity of cocaine. Ellis testified that Sanders stated that he did not have the amount of cocaine that Ellis requested, but he knew where it could be obtained. Ellis declined to accompany Sanders to the unknown location to purchase the cocaine because of safety concerns. Later on March 8, 1991, at the North 41st Street residence, Sanders offered to provide Ellis with two $50 quantities of crack cocaine. Sanders left Ellis momentarily and returned with an unidentified man. The unidentified man handed the two $50 cocaine buys[1] to Sanders, who handed the cocaine to Ellis. Ellis then gave Sanders the $100 payment for the drugs. Ellis inquired of Sanders about the possibility of purchasing cocaine in the future. Sanders stated he could arrange future transactions and instructed Ellis to come to the 1345 North 41st residence whenever he needed cocaine. Thereafter, Steven Avedesian, an Illinois State Police forensic scientist at the Fairview Heights, Illinois forensic laboratory analyzed the drugs and reported that the substance contained 1 gram of cocaine base or "crack" cocaine.
 
 
 3
 The following month, on April 5, 1991, Agent Ellis drove to Sanders' residence and inquired whether he could purchase a half-ounce of "crack" cocaine from Sanders. Ellis gave Sanders his electronic pager telephone number and later that same day, the defendant paged Ellis and stated that a half-ounce of crack cocaine would be available that afternoon at the residence on North 41st Street. When Ellis arrived, Sanders and a man he introduced as "Kenny" met in Ellis' car. Kenny said he had the half-ounce of crack cocaine (approximately 14 grams), and placed it on the armrest of the front seat of the car, and suggested an asking price of $750 to $800. Ellis offered to pay $650 for the "crack", stating that it was slightly less than the requested 14 grams. Sanders, upon hearing this conversation, suggested to Kenny that he should accept the $675 for the cocaine. Kenny acquiesced and Ellis purchased the "crack" for the lower amount. After the buy, Ellis delivered the cocaine to the Illinois State Police forensic laboratory for analysis. Donna Rees, a forensic scientist, chemically analyzed the drugs and concluded that they consisted of 7.2 grams of "crack" cocaine.
 
 
 4
 On May 7, 1991 Sanders again called Ellis on his electronic pager. Ellis responded by calling Sanders and asking him to arrange for a one ounce buy of cocaine. Sanders agreed to a transaction that day and met Ellis at 1419 North 42nd Street. Sanders introduced Ellis at the time to a man referred to as "Tommy." Tommy informed Ellis that he had cocaine for him, but Tommy explained he had to make a telephone call before he could make delivery. Tommy made the call on Ellis' cellular telephone to a person he addressed as "Troy" and asked him to bring the cocaine to Tommy's house. Upon receipt of the drugs from his source, Tommy returned to Ellis' car and handed Sanders a white package. Sanders turned the package over to Ellis who, in turn, gave Sanders $1,030 for the cocaine. Sanders counted the money and turned it over to Tommy. Tommy gave the money to his source and returned to Ellis' car with $5 in change and handed it to Sanders. Next, Ellis gave Sanders $25 for arranging the drug buy and Sanders left. On May 9, 1991, Agent Ellis submitted the contents of this drug buy to Rees, and she reported that Ellis had purchased 25 grams of powder cocaine.
 
 
 5
 Sanders was arrested on May 23, 1991, and shortly thereafter, Ellis informed Sanders of his Miranda rights before interviewing him. After Sanders waived his Miranda rights, he gave Ellis an oral statement claiming that he did not recall selling Ellis any cocaine on March 8, 1991, but admitted arranging the meeting between Ellis and Kenny on April 5, 1991 to purchase one-half ounce of crack cocaine. Sanders' statement also described how he introduced Ellis to Tommy on May 7, 1991, and witnessed Ellis' purchase of one ounce of cocaine from Tommy at the 1419 North 42nd Street residence. Sanders was later charged with two counts of aiding and abetting the distribution of cocaine and cocaine base and one count of distributing cocaine base in violation of 21 U.S.C. § 841(a)(1).
 
 
 6
 At trial, Sanders' defense counsel did not put the defendant on the stand and offered no evidence. After the close of the evidence, Sanders moved for a judgment of acquittal, stating that he neither had the ability to control the drugs nor the suppliers of the drugs in the cocaine buys he arranged for Agent Ellis. The district court denied the motion and the case was submitted to the jury. Sanders was convicted on all three counts of the indictment.
 
 
 7
 Before the sentencing hearing, Sanders' defense counsel filed a motion requesting the court to declare § 841(a)(1) "void for vagueness" as it applies to the term "cocaine base." In support of the motion, Sanders testified at the sentencing hearing that he used rock cocaine before his arrest and that "it's very seldom that people [in the East St. Louis area] ... have crack. You know, majority be cooked up cocaine, rock cocaine." After the district court heard the defendant's and the government's arguments concerning the differences between rock and crack cocaine, the court denied the motion to declare § 841(a)(1) void for vagueness.
 
 II. ISSUES
 
 8
 On appeal, Sanders argues that the district court erred in failing to declare that 21 U.S.C. § 841(a)(1) is void for vagueness as the statute applies to his two convictions for distributing cocaine base and for aiding and abetting the distribution of cocaine base. Second, Sanders claims that the three convictions premised on 21 U.S.C. § 841(a)(1) should be vacated because the evidence was insufficient to prove beyond a reasonable doubt that he had dominion and control over the drugs.
 
 
 9
 II. THE "VOID FOR VAGUENESS" DOCTRINE AS APPLIED TO THE TERM
 
 
 10
 "COCAINE BASE" IN 21 U.S.C. § 841
 
 
 11
 Sanders argues that the court should declare 21 U.S.C. § 841(a)(1) void for vagueness as it applies to his convictions for distributing and aiding and abetting the distribution of cocaine base. Section 841(a)(1) provides that:
 
 
 12
 "it shall be unlawful for any person knowingly or intentionally--1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance...."
 
 
 13
 Section 841(b)(1)(A)(iii) provides for sentencing under § 841(a)(1) if a defendant is convicted of a violation of subsection (a) involving "fifty grams or more of a mixture or substance ... which contains cocaine base." (Emphasis added). Moreover, § 841(b)(1)(B)(iii) permits a convicted defendant to be sentenced for a violation of § 841(a) involving "five grams or more of a mixture or substance ... which contains cocaine base." (Emphasis added). The statute mandates a substantially longer sentence for possession with intent to distribute "cocaine base" than for a similar amount of simple cocaine. United States v. Lawrence, 951 F.2d 751, 753-55 (7th Cir.1991); Compare 21 U.S.C. § 841(b)(1)(B)(ii) with 21 U.S.C. § 841(b)(1)(B)(iii). Sanders contends that the district court erred in calculating his sentence by applying the more severe penalties for offenses involving cocaine base under U.S.S.G. § 2D1.1(a)(3) as opposed to those involving simple cocaine.
 
 
 14
 Sanders asserts that because federal case law to date has not developed a uniform definition for "cocaine base," the statute is unconstitutionally vague because his conduct may or may not fall within § 841(a)(1) depending on how "cocaine base" is defined. Sanders has the burden of demonstrating that § 841(a)(1) is unconstitutionally vague. United States v. Cherry, 983 F.2d 748, 754 (7th Cir.1991). In challenging a statute as void for vagueness, the defendant-appellant is initially required to establish that § 841(a)(1) fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 1858 (1983); United States v. Antzoulatos, 962 F.2d 720, 726 (7th Cir.1992). More importantly, Sanders must establish that the statute fails to "establish minimal guidelines to govern the discretion of law enforcement officials." Kolender, 461 U.S. at 358, 103 S.Ct. at 1858-59; Antzoulatos, 962 F.2d at 726. The defendant-appellant does not argue that § 841 fails to define the criminal offenses for which he was convicted, rather he contends that the § 841(a)(1) prohibition against distributing cocaine base fails to "establish minimal guidelines to govern the discretion of law enforcement officials" because the federal courts have not arrived at a uniform, consistent definition of what constitutes "cocaine base." It is true that neither the statute nor the Sentencing Guidelines contains a definition of cocaine base, United States v. Shaw, 936 F.2d 412, 416 (9th Cir.1991), and that the circuit courts are not in complete agreement on the substance's identifying characteristics. Compare United States v. Lopez-Gil, 965 F.2d 1124, 1134-35 (1st Cir.1992) with Shaw, 936 F.2d at 416. However all the circuits which have addressed the question agree that cocaine base includes "crack." See, e.g., United States v. Jackson, 968 F.2d 158, 162 (2d Cir.1992); Lopez-Gil, 965 F.2d at 1134-35; Shaw, 936 F.2d at 416; United States v. Levy, 904 F.2d 1026, 1033 (6th Cir.1990), cert. denied, 111 S.Ct. 974 (1991); United States v. Williams, 876 F.2d 1521, 1525 (11th Cir.1989); United States v. Brown, 859 F.2d 974, 976 (D.C.Cir.1988).
 
 
 15
 In the instant case, the record clearly reveals that the substance sold in two of the drug buys arranged by Sanders was "crack." Specifically, chemist Avedesian stated at Sanders' trial that the "cocaine base" (which Avedesian said is known as "crack") Ellis bought from Sanders on March 8, 1991 was chemically distinguishable from cocaine hydrochloride or powder cocaine because:
 
 
 16
 "cocaine hydrochloride, normally the powder comes in the salt form which makes it soluble in water. Cocaine base or crack is missing the hyrdochloride, a salt, which would make that cocaine base, just [the] plain form of the cocaine, and its insoluble in water."
 
 
 17
 Similarly, chemist Rees, who analyzed the cocaine base that Ellis purchased from Sanders on April 5, 1991 testified: "[b]asically cocaine is a drug that by itself is in basic form and in order to handle it easier or for different ways of taking it you would make it into a salt[;] and cocaine base normally is smoked so the only difference is chemical...." According to Rees, cocaine base is "crack."
 
 
 18
 The defendant failed to introduce any evidence at trial to contradict Avedesian's or Rees' testimony that the substance Sanders sold to Ellis was other than "cocaine base" or cocaine with its salts removed. The substance at issue is not some new form or derivative of cocaine which was not originally contemplated by Congress. Moreover, we have stated that for sentencing purposes, § 841(b) "prescribes elevated penalties for the possession with intent to distribute cocaine [base] in crack form, regardless of whether the defendant knew the amount or nature of the controlled substance ..." United States v. Schnell, 982 F.2d 216, 221 (7th Cir.1992) (citing United States v. Collado-Gomez, 834 F.2d 280, 281 (2nd Cir.1987) (upholding same and noting that the 1986 Amendments to § 841(b)(1) did not alter the elements of substantive offense, which require the government to prove that a defendant knowingly and intentionally possessed a controlled substance per 21 U.S.C. § 841(a)), cert. denied, 485 U.S. 969, 108 S.Ct. 1244 (1988)).
 
 
 19
 Sanders attempts to confuse the meaning of cocaine base in § 841 by claiming that cocaine base could also mean "rock" cocaine. In the sentencing hearing, Sanders testified that rock cocaine is cocaine that is cooked with water and baking soda and is about 98% pure cocaine, whereas crack cocaine consists of cocaine mixed with speed, Xylocaine, Novocaine, Vitamin B-12, and baking soda. He testified that he used rock cocaine before his arrest, and that the people in the East St. Louis, Illinois area would rarely sell crack since the majority of cocaine was in the "rock" form. Because Sanders testified that he used "rock," rather than "crack" cocaine, he maintains that § 841(a)(1) is inapplicable to his role in arranging two cocaine base transactions. However, he fails to explain how his testimony, that he personally used rock cocaine, advances his argument that § 841(a)(1) is void for vagueness as it applies to his convictions for distributing and aiding and abetting the distribution of cocaine base. The government argues that Sanders' testimony concerning the different additives in rock and crack cocaine is irrelevant because the defendant was not qualified as a chemist to testify that he sold rock, rather than crack cocaine. Thus, the government concludes that Sanders' self-serving testimony regarding his rock cocaine usage was insufficient to establish that the use of the term "cocaine base" in § 841(a)(1) is void for vagueness. Our review of Sanders' testimony at the sentencing hearing reveals that he never testified that he sold rock, rather than crack cocaine, to Officer Ellis. He merely stated that he used rock cocaine in the past and is familiar with the manner in which one "cooks" rock cocaine with baking soda and water. Sanders admitted that he is not a chemist and that the laboratory reports might have found that the drugs he sold were "cocaine base." Even if we were to accept Sanders' definition of cocaine base, the Act is not vague in Sanders' case because the cocaine he sold to Agent Ellis, when analyzed, was found to constitute cocaine base (i.e. "crack"). We hold that Sanders has failed to meet his burden of establishing that 21 U.S.C. § 841 is void for vagueness.
 
 III. SUFFICIENCY OF THE EVIDENCE
 
 20
 The defendant argues that the government failed to present evidence sufficient to demonstrate beyond a reasonable doubt that he had the necessary dominion and control over the cocaine to convict him of violating 21 U.S.C. § 841(a)(1) on one count of distributing cocaine base and on two counts of aiding and abetting the distribution of cocaine base and cocaine. In Jackson v. Virginia, 443 U.S. 307, 319 (1979), the Supreme Court stated that a sufficiency of the evidence challenge will be upheld if "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." The defendant has a heavy burden to overcome when challenging the sufficiency of the evidence. United States v. Olson, 978 F.2d 1472 (7th Cir.1992). In order to uphold the conviction for distribution of cocaine base, the government need only demonstrate that the defendant constructively possessed the drugs. See 21 U.S.C. § 802(8) (defining delivery of narcotics as "actual, constructive, or attempted transfer ..."). To establish constructive possession, "the government must demonstrate that the defendant was able and intended to exert control over the narcotics," or in other words, Sanders must have committed an act that encouraged or assisted another in committing the offense. United States v. Salazar, 983 F.2d 778, 782 (7th Cir.1993); United States v. Molinaro, 877 F.2d 1341, 1348 (7th Cir.1989); United States v. Rodriguez, 831 F.2d 162, 167 (7th Cir.1987). Concerning the March 8, 1991 transaction, the appellant argues that because he lacked sufficient dominion and control over the crack cocaine, he could not be guilty of distribution. Sanders admits on appeal that on March 8, 1991 he brought an unidentified man to Agent Ellis' car, who gave Sanders the "crack" that he in turn sold to Ellis. However, Sanders contends that Ellis' uncontradicted testimony that he (Sanders) passed the cocaine from his source to Ellis and received $100 for the cocaine is insufficient to establish the defendant's dominion or control over the crack cocaine for two reasons. Sanders claims that he neither possessed, had direct access to, nor exercised control over the two $50 stocks of "crack" cocaine that his supplier provided him. See United States v. Galiffa, 734 F.2d 306, 316 (7th Cir.1984). Second, the defendant argues that constructive possession over the distribution of crack cocaine can only be established if one of the three situations in United States v. Wilson exists:
 
 
 21
 " [W]hen the defendant ha[s] authority or control over the actions of the actual transferor during the transfer. See United States v. Waller, 503 F.2d 1014, 1015-16 (7th Cir.1974), cert. denied, 420 U.S. 932 (1975).
 
 
 22
 " [W]hen the defendant arranges the distribution, and there is an equal or 'partnership' relationship between the defendant and the actual transferor in the distribution [.] See United States v. Oguendo, 505 F.2d 1307, 1310 (5th Cir.1975) [.]
 
 
 23
 "... [W]hen there is an understanding between the defendant and the actual transferor and the transferee that the transferor will act in the defendant's stead if the defendant is unavailable to make the transfer himself. See United States v. Witt, 618 F.2d 283, 285 (5th Cir.1980), cert. denied, --- U.S. ----, 101 S.Ct. 234 (1980)."
 
 
 24
 United States v. Wilson, 657 F.2d 755, 762 (5th Cir.1981) (emphasis added). Sanders asserts that since none of these three relationships set forth in Wilson apply to his role in arranging the crack cocaine purchase for Ellis on March 8, 1991, that the government failed to establish his constructive possession of the crack sold to Ellis on March 8.
 
 
 25
 From our review of the record, the evidence clearly establishes that the defendant knew who to contact to purchase the "crack" and in fact did call his source to set up a transaction with Ellis on March 8, 1991. During this transaction, the defendant Sanders accepted Ellis' payment of $100 for the crack and transferred the drugs to Ellis. Following the sale, Ellis inquired whether Sanders could arrange future drug transactions, and the defendant replied that he could. Although the government's evidence did not establish that Sanders actually owned the crack on March 8, 1991, Sanders clearly had possession and control over the crack during the time that he had it in his hands and transferred it from his source to Ellis. See Molinaro, 877 F.2d at 1348-49 (where defendant's action to arrange the time and meeting place of the cocaine transaction established his constructive possession). Our review of the record reveals that a rational trier of fact could have found that Sanders' actions in arranging the details of the cocaine transaction, in physically passing the crack cocaine from his source to Agent Ellis, and in receiving the $100 payment for the drugs on March 8, 1991 established his constructive possession of the crack cocaine. See id. Accordingly, we uphold Sanders' conviction in Count I for distributing one gram of cocaine base (crack) in violation of § 841(a)(1).
 
 
 26
 Counts II and III of the indictment charged Sanders with aiding and abetting the distribution of cocaine base and cocaine in violation of 21 U.S.C. § 841(a)(1). Under 18 U.S.C. § 2, those persons who aid and abet the distribution of drugs are treated as principals and may be charged with distribution under § 841(a)(1). In order to sustain a conviction for aiding and abetting the distribution of cocaine, there must be evidence that the defendant knowingly "was associated with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed." United States v. Scroggins, 939 F.2d 416, 421 (7th Cir.1991) (quoting Galiffa, 734 F.2d at 311). Sanders presents three reasons why he did not aid or abet the distribution of both crack and cocaine on April 5, 1991 or on May 7, 1991 respectively. First, the defendant argues that he lacked access or control over the drugs, and that he lacked control over his cocaine suppliers, Kenny and Tommy, to establish his dominion or control over the drugs. See Wilson, 657 F.2d at 762 (citing Waller, 503 F.2d at 105-16). Secondly, he contends that since neither Kenny nor Tommy compensated him for arranging either the April or May cocaine transactions, that there was no evidence of any partnership relation between himself and Kenny or Tommy to indicate his dominion or control over the distribution of cocaine. See Wilson, 657 F.2d at 762 (citing Oguendo, 505 F.2d at 1310). Third, Sanders claims that there was no understanding between himself and Kenny or Tommy that he would transfer the cocaine in their place if Kenny or Tommy were unavailable to complete the drug transactions with Ellis. See Wilson, 657 F.2d at 762 (citing Witt, 618 F.2d at 285). The defendant-appellant concludes that the evidence failed to establish his dominion or control over the cocaine sold to Officer Ellis in April and May of 1991.
 
 
 27
 We review the evidence presented at trial to determine if the defendant-appellant aided and abetted the distribution of crack on April 5, 1991 and cocaine on May 7, 1991. Ellis testified that on April 5, 1991 Sanders arranged for the sale, designated the delivery point of the transaction, paged Ellis on his beeper, and informed him where the "crack" would be available. After the defendant met with Ellis at 1419 North 42nd Street in East St. Louis, Ellis testified that Sanders introduced a man, who he identified as Kenny, to the officer in his (Ellis') car. Ellis stated that Kenny brought a half-ounce of crack cocaine and placed the drugs between the officer and Sanders on the front seat armrest of Ellis' car. The officer then explained how Sanders exercised control over Kenny: not only did Sanders arrange the buy, but when Kenny requested $750 to $800 for the "crack" cocaine, Sanders stated that Ellis was "cool" and Kenny should accept a lower price. Ellis testified that Kenny followed the defendant's advice and accepted $675 for the "crack." In Salazar, the defendant arranged for his cocaine supplier to meet with undercover DEA agents to purchase cocaine. Salazar, 983 F.2d at 782. Salazar and his cocaine supplier picked up the cocaine and met with the DEA agents and completed the cocaine sale. Id. at 779-80. Upon meeting the DEA agents, Salazar and his supplier stated that "they" had brought the cocaine and both of them asked whether the agents had the money to purchase the drugs. Id. Based on these facts, the Salazar court found that Salazar constructively possessed the cocaine. Id. at 782. As in Salazar, Sanders' relationship with Kenny, which allowed him to negotiate a lower price ($675) for the "crack" cocaine on April 5, 1991, establishes that the defendant intended to and did in fact exert control over the narcotics. Thus, because Sanders set up the buy, introduced the buyer (Ellis) and seller (Kenny), and instructed Kenny to accept a lower price, Sanders clearly exerted control over the narcotics transaction. Accordingly, there was sufficient evidence in the record to establish that Sanders aided and abetted the distribution of crack on April 5, 1991. See id. at 779-80; Molinaro, 877 F.2d at 1348-49.
 
 
 28
 The May 7, 1991 cocaine buy set forth in Count III also establishes Sanders' role in aiding and abetting in the distribution of cocaine because Ellis testified that (1) Sanders set up a meeting between Ellis and his cocaine source, Tommy, to purchase cocaine at the 1419 North 42nd Street residence; (2) the defendant actually transferred the 25 grams of cocaine from Tommy to Ellis; and (3) Sanders collected Ellis' $1,030 payment for the cocaine, counted the money, and turned it over to Tommy in return for the cocaine. The defendant's role in organizing the cocaine sale by arranging for Tommy to deliver the drugs to him and his (Sanders') role in actually transferring the cocaine from Tommy to Ellis demonstrates that Sanders exerted complete dominion and control over the drugs that he distributed with the assistance of Tommy. See Salazar, 983 F.2d at 782; Molinaro, 877 F.2d at 1348-49; Galiffa, 734 F.2d at 316. Ellis' testimony of the defendant's integral role in arranging and taking actual steps to complete the cocaine transaction by physically passing the drugs and $1030 purchase price between Tommy and himself reveals that Sanders had constructive possession of the cocaine during the May 7, 1991 transaction. Moreover, the evidence in the instant case supports all the elements of Sanders' aider-and-abettor responsibility in Counts I and II: (1) Kenny and Tommy had possession of the cocaine intending to distribute it on April 5, 1991 and May 7, 1991; (2) Sanders committed acts that encouraged or assisted both Kenny and Tommy in committing the offense; (not only did Sanders set up the deals and arrange the location, but on April 5, 1991, the defendant directed Kenny to accept a lower price for the cocaine base and on May 7, 1991, Sanders received the 25 grams of cocaine from Tommy before transferring the narcotics to Ellis in exchange for the purchase price); and (3) Sanders himself had the requisite intent to aid in the distribution of cocaine base with Kenny and cocaine with Tommy. See Salazar, 983 F.2d at 782; Molinaro, 877 F.2d at 1349; Rodriguez, 831 F.2d at 167. We hold that any rational trier of fact could have found that Sanders violated § 841(a)(1) in aiding and abetting the distribution of cocaine base and cocaine beyond a reasonable doubt as charged in Counts II and III respectively.
 
 IV. CONCLUSION
 
 29
 For the foregoing reasons, Sanders' judgment of conviction on Counts I, II, and III is
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 The record does not reveal what type of container was used for the two $50 quantities of cocaine at the time of the March 8, 1991 sale